COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, AtLee and Senior Judge Clements
Argued at Lexington, Virginia


CEDRIC DETAVIUS SANDIDGE
                                                        OPINION BY
v.        Record No. 1851-15-3              JUDGE RICHARD Y. ATLEE, JR.
                                                     DECEMBER 20, 2016
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              F. Patrick Yeatts, Judge

            Keith Orgera, Deputy Public Defender, for appellant.

            Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
            Herring, Attorney General, on brief), for appellee.


        In the Circuit Court of the City of Lynchburg ("the circuit court"), Cedric Detavius

Sandidge pled guilty, pursuant to North Carolina v. Alford, 400 U.S. 25 (1970),[1] to two counts of

distribution of cocaine, third or subsequent offense.[2]  Sentenced to serve twenty years in the

penitentiary, Sandidge argues on appeal that the circuit court wrongly imposed mandatory

minimum sentences.  We disagree and affirm.

                                                I.

        Sandidge does not dispute the facts underlying his convictions.  On two separate dates, he

sold cocaine to a confidential informant working for the Commonwealth.  Because of two

---

[1] "When offering an Alford plea of guilty, a defendant asserts his innocence but admits
that sufficient evidence exists to convict him of the offense." Ramsey v. Commonwealth, 65
Va. App. 593, 596 n.1, 779 S.E.2d 241, 243 n.1 (2015).

[2] Sandidge also entered Alford pleas of guilty to two additional felony counts of
distribution of cocaine within 1,000 feet of a school zone.  Those two charges, which are not at
issue in this appeal, carried no mandatory minimum time.  The circuit court sentenced Sandidge
to a total of four years in the penitentiary for those charges, all of which was suspended.

previous convictions for distributing cocaine, he was charged with two counts of distribution of cocaine, third or subsequent offense.

In June of 2015, Sandidge entered <u>Alford</u> pleas of guilty to the charges.[3] The circuit court engaged in a colloquy with Sandidge, during which Sandidge confirmed that he understood "that there's no agreement as to sentencing, that the [c]ourt's going to set this matter for a separate sentencing event, order guidelines in the case and have a sentencing hearing," and that he understood "the [c]ourt can exceed the guidelines in the case so long as the [c]ourt does not exceed the maximum penalty provided by law for these offenses." Following a proffer of the evidence by the Commonwealth, the circuit court accepted Sandidge's pleas and found him guilty of the charges, noting that "the evidence of guilt is overwhelming and substantially negates any claim of innocence." The circuit court then continued the case for sentencing.

More than four months later, in October of 2015, Sandidge returned to the circuit court for sentencing. A third or subsequent violation of Code § 18.2-248(C) carries a ten-year mandatory minimum sentence. This mandatory minimum is inapplicable, however, provided the circuit court finds that (1) the person has never been convicted of certain violent felony offenses; (2) the offense did not involve violence, threats, or weapons; (3) no one was injured or killed as a result of the offense; (4) the person did not lead others in the offense and the offense was not a "continuing criminal enterprise"; and (5) "[n]ot later than the time of the sentencing hearing, the person has truthfully provided to the Commonwealth all information and evidence the person has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Code § 18.2-248. A caveat contained within the final requirement states that "the fact that the person has no relevant or useful other information to provide or that the

---

[3] In exchange for his pleas, the Commonwealth agreed to move for entry of an order of *nolle prosequi* as to one pending felony, and agreed not to indict Sandidge for other uncharged conduct. <u>See</u> Rule 3A:8(c), subsections (1)(A), (2), and (3).

Commonwealth already is aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." Id. The Commonwealth conceded that, of the five requirements listed above, Sandidge had satisfied the first four. Only the last requirement was at issue.

At the beginning of the sentencing hearing, Sandidge's attorney observed that "[p]art of [Code § 18.2-248] does involve us communicating all the information in a truthful manner to the Commonwealth about these facts and circumstances. That has not been done prior to the sentencing." Sandidge's attorney stated that the statute does not delineate precisely how such information must be communicated. He then announced "we may have a motion to [sic] a continuance." The Commonwealth opposed the motion. In denying the motion, the circuit court said:

> I don't find that there's good cause for a continuance here today to come in court knowing that this issue has been on the table for quite some time now and at the last minute ask for a continuance and potentially comply with . . . the requirements of the statute to alleviate the burden on the Defendant of mandatory minimums. It's too late for a continuance. . . . I'm going to take about a five or ten minute recess . . . and then we're going to proceed to sentencing on this matter.

Following the recess, Sandidge testified in his own behalf. During his testimony, Sandidge gave the following answers to questions from his attorney:

> [Attorney:]    And we're here today for two distribution cases. You know, why [sic] would you say the reason is you sell this for?
>
> [Sandidge:]    (Inaudible) my family and my two kids.
>
> [Attorney:]    Do you use as well?
>
> [Sandidge:]    (Inaudible), yeah.
>
> [Attorney:]    All these instants [sic] that you have here, is there any—outside of the facts of the case, is there any other additional information you can provide?

[Sandidge:] No, not really.

[Attorney:] Okay.

Neither the circuit court nor the Commonwealth's Attorney asked Sandidge any questions.

The circuit court rejected Sandidge's claim that the mandatory minimums did not apply.

In pronouncing sentence, the circuit court stated that:

> [it] was not the intent [of the legislature] to have [j]udges disregard
> mandatory sentencing in a case such as this because [j]udges or the
> Commonwealth or defense attorneys don't agree with the propriety
> of those mandatory sentencing requirements. The fact of the
> matter is they're required in this case, there is not an exception and
> the subsection C requirements haven't been met in this case.
> Whether I think twenty years under the facts of this case is too
> much is irrelevant because this [c]ourt must follow the statute and
> must apply the mandatory minimums in this particular case.

The circuit court then imposed two ten-year mandatory minimum sentences for the two charges of third or subsequent distribution of cocaine, for a total active sentence of twenty years in the penitentiary. As required by Code, the sentences were ordered to run consecutively. Sandidge then noted his appeal.

## II.

Statutory interpretation is a legal question that this Court reviews *de novo*. Jackson v. Commonwealth, 274 Va. 630, 633, 652 S.E.2d 111, 113 (2007). We view the facts in the light most favorable to the Commonwealth. Blake v. Commonwealth, 288 Va. 375, 381, 764 S.E.2d 105, 107 (2014).

> A trial court's assessment of punishment is reviewed under an
> abuse of discretion standard. A trial court "by definition abuses its
> discretion when it makes an error of law. . . . The
> abuse-of-discretion standard includes review to determine that the
> discretion was not guided by erroneous legal conclusions." To the
> extent that determinations regarding sentencing involve the
> interpretation of a statute or the common law, such an
> interpretation is a question of law reviewed *de novo* on appeal.

- 4 -

Commonwealth v. Greer, 63 Va. App. 561, 567-68, 760 S.E.2d 132, 135 (2014) (citation omitted) (alteration in original) (quoting Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008)).

Code § 18.2-248(C) prohibits distribution of certain controlled substances, stating in relevant part that if a person distributes "500 grams or more of . . . cocaine," and

> it is alleged in the warrant, indictment or information that he has been before convicted of two or more such offenses . . . and such prior convictions occurred before the date of the offense alleged in the warrant, indictment, or information, he shall be sentenced to imprisonment for life or for a period of not less than 10 years, 10 years of which shall be a mandatory minimum term of imprisonment to be served consecutively with any other sentence, and he shall be fined not more than $500,000.

As noted earlier, the statute then provides an exception to the mandatory minimum:

> The mandatory minimum term of imprisonment to be imposed for a violation of this subsection shall not be applicable if the court finds that:
>
> a. The person does not have a prior conviction for an offense listed in subsection C of [Code] § 17.1-805;
>
> b. The person did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense or induce another participant in the offense to do so;
>
> c. The offense did not result in death or serious bodily injury to any person;
>
> d. The person was not an organizer, leader, manager, or supervisor of others in the offense, and was not engaged in a continuing criminal enterprise as defined in subsection I; and
>
> e. Not later than the time of the sentencing hearing, the person has truthfully provided to the Commonwealth all information and evidence the person has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the person has no relevant or useful other information to provide or that the Commonwealth already is aware of the information shall not

preclude a determination by the court that the defendant has complied with this requirement.

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Bd. of Supervisors of James City Cty. v. Windmill Meadows, LLC, 287 Va. 170, 179-80, 752 S.E.2d 837, 842 (2014) (quoting Commonwealth v. Leone, 286 Va. 147, 150, 747 S.E.2d 809, 811 (2013)). "When bound by the plain meaning of the language used, appellate courts are not permitted 'to add or subtract from the words used in the statute.'" Nicholson v. Commonwealth, 56 Va. App. 491, 503, 694 S.E.2d 788, 794 (2010) (quoting Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771 (1918)). Furthermore, "the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983).

Sandidge presents a two-part argument, both turning on the meaning of subpart "e" quoted above. First, Sandidge asserts that the phrase "[n]ot later than the time of the sentencing hearing" means that any disclosure of information to the Commonwealth need only occur before the sentencing hearing *ends*. The Commonwealth argues, in contrast, that this phrase means that any disclosure must occur before the sentencing hearing *begins*. Second, Sandidge asserts that by answering his attorney's questions at the sentencing hearing, he satisfied the requirements of subpart "e," and thus should not have received mandatory minimum sentences.

A.

To begin, Sandidge urges us to apply the doctrine of lenity in interpreting the phrase "[n]ot later than the time of the sentencing hearing." Lenity is a rule of statutory construction requiring that a court resolve ambiguities in penal statutes in a defendant's favor. See Jones v.

Commonwealth, 64 Va. App. 361, 367 n.2, 768 S.E.2d 270, 273 n.2 (2015). But "[t]he rule of lenity serves only to resolve genuine ambiguities and 'does not abrogate the well recognized canon that a statute . . . should be read and applied so as to accord with the purpose intended and attain the objects desired if that may be accomplished without doing harm to its language.'" Fitzgerald v. Loudoun Cty. Sheriff's Office, 289 Va. 499, 508 n.3, 771 S.E.2d 858, 862 n.3 (2015) (quoting Cartwright v. Commonwealth, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982) (alteration in original)). Thus before we invoke lenity, there must be some statutory ambiguity. We find Code § 18.2-248 unambiguous. Because we have no ambiguity to resolve, we need not invoke the doctrine of lenity. Instead, we apply the plain meaning of the statute's words, and in doing so we "may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated." Gunn v. Commonwealth, 272 Va. 580, 587, 637 S.E.2d 324, 327 (2006) (quoting Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003)).

Sandidge argues that the phrase "[n]ot later than the time of the sentencing hearing" must be read to include the period comprising the sentencing hearing itself. However, that idea could just as easily have been expressed as "[n]ot later than the sentencing hearing." We cannot ignore the General Assembly's decision to include the words "time of," because "every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." Baker v. Commonwealth, 284 Va. 572, 577, 733 S.E.2d 642, 645 (2012) (quoting Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998)). When cases are set for sentencing, or any other purpose, trial courts provide the parties a date and time. That time is a start time, not an end time. Accordingly, the logical construction of the words "time of the sentencing hearing" is when the sentencing hearing begins.

Finding the phrase "[n]ot later than the time of the sentencing hearing" to mean the end of the sentencing hearing would also frustrate the purpose of the statute, and lead to absurd results. Therefore, we cannot accept Sandidge's interpretation of the phrase. Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992) (observing that "a statute should never be construed so that it leads to absurd results"). Pursuant to subpart "e," a defendant hoping to avoid the mandatory minimum must have "truthfully provided to the Commonwealth all information and evidence the person has concerning the offense or offenses." This requirement of truthfulness is meaningless unless the Commonwealth has an opportunity to assess and validate the defendant's information. Without the ability to test a statement for veracity and completeness, courts would be required to assume the truth, and the full disclosure, of statements given by a felon at sentencing for the purpose of avoiding a decade-long mandatory prison term. Given the strong incentive any defendant has to avoid such a lengthy sentence, the General Assembly quite reasonably drafted a statute that permits the courts and the Commonwealth to guard against the provision of false and/or incomplete information. Although cross-examination has been called "the best method yet devised for testing trustworthiness of testimony," Sartor v. Ark. Nat. Gas Corp., 321 U.S. 620, 628 (1944), and the Commonwealth would be permitted to cross-examine a defendant attempting to provide information via testimony at a sentencing hearing, cross-examination is no substitute for investigation. Investigation to confirm the truthfulness and complete disclosure of information cannot meaningfully occur simultaneously with a sentencing hearing.

Finally, truthful compliance with subpart "e" is more than an esoteric exercise in catharsis. Information provided by a defendant in satisfaction of this subpart (or a defendant's confirmation that he has no such information) assists law enforcement in its ongoing efforts to combat illegal drug distribution. The potential that such information may be used by law

enforcement to combat future crimes makes confirmation of its truth all the more crucial. We therefore hold that the phrase "[n]ot later than the time of the sentencing hearing" means prior to the commencement of the sentencing hearing. Sandidge provided no such information (nor did he confirm that he lacked such information) prior to the commencement of the sentencing hearing here.[4] For that reason, he failed to satisfy subpart "e" of Code § 18.2-248(C).

B.

Sandidge also argues that "[i]f a defendant does not have additional information to give the Commonwealth, [Code §] 18.2-248 requires nothing further from him." He asserts that, since the statute does not specify any mechanism by which a defendant must make known his lack of additional information, it does not "require the defendant to do anything prior to the

---

[4] Although neither this Court nor our Supreme Court has directly examined the language at issue, numerous federal courts have interpreted nearly identical language contained in the United States Code. In United States v. Galvon-Manzo, 642 F.3d 1260 (10th Cir. 2011), the United States Court of Appeals for the Tenth Circuit decided an appeal based upon an allegedly erroneous imposition of a ten-year mandatory minimum sentence for distribution of cocaine. The appellant argued that he had complied with portions of the United States Code that allowed for an exception to the mandatory minimum. (The opinion refers to the exception as a "safety-valve" provision.) The United States Code section at issue, 18 U.S.C. § 3553, provides "[l]imitation on applicability of statutory minimums in certain cases." 18 U.S.C. § 3553(f). The last of the subparts in this subsection provides the fifth and final conjunctive requirement:

> [N]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Galvon-Manzo, 642 F.3d at 1265 (alteration in original) (quoting 18 U.S.C. § 3553(f)(5)). While confirming that "resolution of disputes arising out of or relating to the debriefing process lies within the sound discretion of the district court," id. at 1267, the Tenth Circuit held "that, generally speaking, any and all disclosures for safety-valve purposes are timely only if they occur prior to the commencement of the sentencing hearing." Id. The Tenth Circuit went on to cite decisions from the First, Second, Fifth, Seventh, Eighth, and Eleventh Circuits interpreting the provision in a similar manner. Id.

sentencing hearing," since "all a defendant can do to show that he has no more information to provide the Commonwealth is to say so, and make himself available to the Commonwealth to address any questions or concerns."  Essentially, Sandidge argues that his brief, and self-serving, testimony at the sentencing hearing[5] adequately showed that he had "no relevant or useful other information to provide or that the Commonwealth already [wa]s aware of the information."  Because we find that any statements Sandidge made after commencement of the sentencing hearing came too late, we do not reach this portion of his argument.

III.

The words "[n]ot later than the time of the sentencing hearing," contained in subpart "e" of Code § 18.2-248(C), mean that a defendant must comply with that subpart before commencement of the sentencing hearing.  Sandidge did not satisfy this requirement, therefore the circuit court did not err when it imposed mandatory minimum sentences for Sandidge's crimes.

Affirmed.

---

[5] Sandidge's lawyer asked:  "[O]utside of the facts of the case, is there any other additional information you can provide?"  Sandidge answered "No, not really."